IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOSHUA JOHN STEPHENS                                                                                    PLAINTIFF

V.                                        CASE NO. 5:17-CV-05045

SHERIFF HELDER, Washington County,
Arkansas; MAJOR DENZER, Washington
County Detention Center (WCDC); LT. FOSTER,
WCDC; SERGEANT GARDNER, WCDC; JOHN
AND JANE DOE CAPTAIN, SHIFT LIEUTENANT,
and SHIFT SERGEANT; SHEILA SHARP, Director,
Arkansas Community Correction (ACC); KEVIN MURPHY,
Chief Deputy Director, ACC; ACC SUPERVISOR HOGG;
ACC SUPERVISOR TRACY CREWS; ACC OFFICER
K. WEST; ACC OFFICER EGLIN; ACC OFFICER
T.J. SPENCER; ACC OFFICER PENGUITE; ACC
SUBSTANCE ABUSE COUNSELOR CAROLINE F.;
JOHN AND JANE DOE ACC CORRECTIONS
STAFF; WASHINGTON COUNTY PROBATION
AND PAROLE OFFICER K. WEST; SPRINGDALE POLICE
DEPARTMENT CHIEF MIKE PETERS (SPD);
OFFICER HIGNIGHT, SPD; OFFICER MERCADO,
SPD; and JOHN AND JANE DOE CAPTAIN, SHIFT
LIEUTENANT, and SHIFT SERGEANT                                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This is a civil rights action filed by Plaintiff Joshua John Stephens, pursuant to 42 U.S.C. § 1983. Stephens proceeds *pro se* and *in forma pauperis.* The matter is presently before the Court for initial screening of his Complaint under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A. For the reasons discussed below, the Court finds that this action should be summarily dismissed pursuant to Section 1915A and Section 1915(e)(2)(B).

1

## I. BACKGROUND

According to the allegations of the Complaint, on December 19, 2016, Stephens reported to Arkansas Community Correction ("ACC"),[1] and there encountered Parole Officers Spencer, Eglin, West, as well as an unknown training officer. Stephens states that he reported to these officers his substance abuse problem and his need for professional help for both substance abuse and mental health issues. He alleges that West denied his request for help and then "sanctioned [him] to jail." (Doc. 1, p. 20).

Stephens recounts that while he was being transported to the Washington County Detention Center ("WCDC"), Officer Eglin allegedly advised him that residential treatment was not within the powers of the ACC. Stephens claims he will present numerous witnesses to establish that Officer Elgin was wrong about that, as Stephens believes that parolees under the supervision of the ACC are often afforded the opportunity to attend residential treatment. Stephens asserts that the ACC Defendants ordered him to jail despite knowledge of his two previous overdoses, which "showed Deliberate Indifference toward the Plaintiff" in violation of the "14th and 8th Amendments just to name a few." *Id.* at 20-21. Stephens further alleges that on several other occasions, ACC Supervisor Tracy Crews demonstrated personal disdain and dislike for both Stephens and his father. Stephens maintains that Crews' attitude toward him demonstrates a lack of adherence to ACC policies and procedures, as well as an inability to have an unbiased attitude.

---

[1] The ACC is a state agency with multiple offices in Arkansas. It was created by the State legislature "to assume the responsibilities of management of all community punishment facilities and services, execute the orders of the criminal courts of the State of Arkansas and provide for the supervision, treatment, rehabilitation and restoration of adult offenders as useful law-abiding citizens within the community." *See* http://www.dcc.state.ar.us/history-goals. (last visited June 12, 2017).

The Complaint goes on to state that on January 20, 2017, Parole Officer West told Stephens that his recent urine sample had tested positive for drugs, and this violation, coupled with Stephens' failure to pay his supervision fees, would result in him being incarcerated once again. Stephens and West then visited Caroline F., the ACC substance abuse counselor. According to Stephens, Caroline F. Told him that he would be allowed into a substance abuse class because he appeared to be on methamphetamine. He disagreed with her about his methamphetamine use, and then claims he asked West for a "grievance procedure"—presumably so that he could complain about Caroline F.'s decision to put him in a substance abuse class. Officer West did not respond to Stephens' request for the grievance procedure. Instead, West escorted Stephens to his car in the parking lot. Stephens questions why, if he was supposedly under the influence of drugs, Officer West and Caroline F. allowed him to drive away from the ACC office. Stephens thinks that he should have been treated as impaired, and the failure to treat him as such showed a deliberate indifference to his safety. He also contends that West's failure to provide him with the grievance procedure violated his "1st Amendment rights along with others." *Id.* at 19.

On February 1, 2017, ACC Parole Officers Eglin, Spencer, and Penguite, and Springdale Police Department ("SPD") Officers Hignight and Mercado went to Stephens' residence at 659 Daisy Lane in Springdale, Arkansas, to arrest him for a parole violation. According to Stephens, the "white warrant" that had been issued for his arrest was for possession of firearms. Stephens believes the basis for the warrant was invalid. He maintains that he did not possess any firearms. Rather, he argues that the Daisy Lane residence where he was staying belonged to Marty and Terri Stephens, and the firearms

that were discovered there were not his, but either theirs or someone else's. Stephens contends that when the officers searched the residence, they found firearms in areas that were "unaccessable [sic] to myself." *Id.* at 11. Further, Stephens claims that Officer Hignight of the SPD informed him that he was not being charged with possession of the firearms but was being transported to the WCDC on the basis of warrants stemming from prior traffic violations. *Id.*

Stephens maintains that on February 2, 2017, ACC Officer West sent a violation report to the Parole Board that contained false statements, namely, that Stephens had been arrested and booked on felony charges and was incarcerated pending trial. Stephens alleges that ACC Officers West, Spencer, and Eglin, under the supervision of Crews, knowingly violated his due process rights, as well as his right to trial by an impartial jury, by submitting that "false" violation report to the Parole Board, which in turn subjected Stephens to "cruel and unusual punishment." *Id.* at 14.

On February 9, 2017, Stephens alleges that the parole violation report was sent back "with the intention to violate the Plaintiff and send him to prison under the assumption that the information in said violation report was accurate and without bias." *Id.* at 14. He asserts that the ACC officers, under the supervision of Crews, then coerced the SPD officers to arrest Stephens and deprive him of due process, subject him to an unreasonable search and seizure, and violate his right to equal protection under the law. *Id.* at 13-14.

It appears that, according to the facts in the Complaint, Stephens was, indeed, arrested on a parole violation, entered WCDC custody, and attempted at some point to secure his own release, perhaps on bond. He recounts that before he obtained his release

from the WCDC, Officer West put "a hold" on him, "[n]ot enabling [him] to leave." *Id.* at 12. Stephens claims that members of his family had been in touch with the SPD and the ACC prior to this time and had understood that he was not being charged with a weapons violation. However, on February 16, 2017, "15 days after being arrested," he was charged with possession of firearms, and he was fingerprinted and booked. *Id.* Stephens believes that charging him with a firearms offense violated his rights under the Fourth and Fourteenth Amendments. *Id.* He further believes that the following Defendants are also to blame for violating his constitutional rights with respect to this incident: SPD Chief Peters, the John Doe Lieutenant on duty at the time Stephens was formally charged and fingerprinted, the John Doe Sergeant on duty, and SPD Officers Hignight and Mercado. *Id.* at 17.

Next, the Complaint alleges that between the dates of February 1, 2017, and February 16, 2017, ACC Officers Spencer, Penguite, and Eglin, and SPD officer Hignight violated Stephens' right to due process and to an impartial jury by knowingly and intentionally "doctoring and falsifying official reports with the intention to violate said rights of the Plaintiff and send him to prison." *Id.* at 23. Stephens maintains the probation violation reports of the SPD and the ACC were "conflicting in nature demonstrating deliberate indifference and violating the Equal Protection of the Plaintiff as outlined in the constitution of the United States of America." *Id.* He further alleges that the ACC officials violated "confiscation protocol" by bringing the firearms that were the subject of the weapons-possession charge against him to the Washington County Probation and Parole Office. Stephens asserts that the ACC Defendants did not follow protocol in regards to the

chain of custody of evidence, which violated his Fourth Amendment rights. *Id.* at 24.

On February 23, 2017, after Stephens was incarcerated in the WCDC, he claims he submitted a grievance through the pod kiosk system. His grievance described how certain ACC officials allegedly violated his constitutional rights. In Stephens' view, Sergeant Gardner of the WCDC "responded [to the grievance] with a retaliatory statement saying any more gr[ie]vances would be flagged as abuse." *Id.* at 24. Stephens understood Gardner's response to mean that he "could face disciplinary action for exercising his 1st Amendment right . . . utilizing the only outlet available to him"—the WCDC's grievance system. *Id.* Stephens therefore maintains that Officer Gardner's response to his grievance violated his constitutional rights, in that Officer Gardner failed to substantively respond to the grievance and then threatened to retaliate against Stephens for exercising his right to "speak" through the grievance process.

## II. LEGAL STANDARD

Under the PLRA, the Court is obligated to screen a case prior to the issuance of service of process. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (a) are frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a

pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III. DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under Section 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

### A. Personal-Capacity Claims Against Certain Defendants

Stephens emphasizes in his Complaint that he means to sue all Defendants in their personal capacities, but only some Defendants in their official capacities. In particular, he states several times in his Complaint that he means to sue the ACC Defendants in their personal capacities only, but the SPC and WCDC Defendants in both their official and personal capacities. As the Supreme Court explained in *Hafer v. Melo*, 502 U.S. 21, 25 (1991), "[s]uits against state officials in their official capacity . . . should be treated as suits against the State . . . . [b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official . . . ." Accordingly, an official-capacity claim

pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III. DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under Section 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

### A. Personal-Capacity Claims Against Certain Defendants

Stephens emphasizes in his Complaint that he means to sue all Defendants in their personal capacities, but only some Defendants in their official capacities. In particular, he states several times in his Complaint that he means to sue the ACC Defendants in their personal capacities only, but the SPC and WCDC Defendants in both their official and personal capacities. As the Supreme Court explained in *Hafer v. Melo*, 502 U.S. 21, 25 (1991), "[s]uits against state officials in their official capacity . . . should be treated as suits against the State . . . . [b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official . . . ." Accordingly, an official-capacity claim

asserts that a governmental entity's official policy or custom played a part in the violation of federal law. *Id.* (quotations and citations omitted). By contrast, personal-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

After carefully reviewing the Complaint, the Court finds it to be devoid of factual allegations concerning the following Defendants: Sheriff Helder of the WCDC; Major Denzer of the WCDC; Lieutenant Foster of the WCDC; Sheila Sharp of the ACC; Kevin Murphy of the ACC; Supervisor Hogg of the ACC; and John and Jane Doe Captains, Shift Lieutenant, and Shift Sergeant of both the WCDC and the SPD. Therefore, Stephens has failed to state any personal-capacity claims these Defendants under Section 1983. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claims under § 1983 not cognizable absent allegations that each defendant was personally involved in or had direct responsibility for the incidents).

Further, to the extent Stephens has attempted to assert personal-capacity claims against the above-mentioned Defendants simply because they are supervisors of other Defendants, such claims must fail. "A supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation." *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007) (citations omitted). To prove supervisory liability, "[t]he plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a

constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted). As the Complaint fails to explain what, if any, actions the above Defendants took with respect to Stephens, and further fails to allege any failure to train, these Defendants are not subject to personal liability due to their supervisory status alone. Accordingly, all personal-capacity claims against these Defendants are dismissed for failure to state a claim.

## B. Substantive Causes of Action

### 1. Failure to Provide Residential Drug Treatment

Stephens' first claim is that on December 19, 2016 and January 20, 2017, ACC officials refused to place him in a residential drug treatment center for his self-disclosed drug and mental health issues. He asserts that on December 19, instead of being allowed to receive outpatient treatment, he was escorted to jail, in violation of his due process rights and in deliberate indifference to his health and well-being. On January 20, he was told he would be allowed to take substance abuse classes with the ACC, but he apparently disagreed that he was "on methamphetamine" at the time and did not desire to participate in the ACC's classes.

The Court observes that the Fourteenth Amendment prohibits a state from depriving a person of life, liberty, or property without due process of law. When there is a claimed denial of due process, the court must inquire "into the nature of the individual's claimed interest." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). "[T]o obtain a protectible right 'a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have

a legitimate claim of entitlement to it.'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Here, Stephens points to no statute, regulation, policy, or procedure that creates a right to placement in a residential treatment program. Merely because he knows of some individuals who were on parole and then placed in residential treatment programs does not establish a *constitutional* right to participate in such programs. *See, e.g., Griffin v. Mahoney*, 243 Fed. App'x. 221, (9th Cir. 2007) (sexual offender had no right to rehabilitative treatment); *Webber v. Penn. Bd. of Prob. and Parole*, 199 Fed. App'x. 186, 187-88 (3d Cir. 2006) (no right to be placed in a community-based treatment program for veterans instead of being imprisoned after parole was revoked). The Court finds that Stephens has failed to state a plausible Fourteenth Amendment claim.

Stephens also alleges that the act of putting him in jail, rather than treating him for his drug and mental health issues, violated his Eighth Amendment rights. "The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). "The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *McLamore v. South Carolina*, 409 U.S. 934, 936 (1972) (internal quotation marks and citation omitted). The Court finds that no cognizable Eighth Amendment claim has been stated here. The ACC Defendants' alleged failure to grant Stephens' request to participate in a residential rehabilitation or other treatment program does not constitute cruel and unusual punishment. Stephens does not deny that he

violated the conditions of his parole. The violation of those conditions led to his incarceration.

Lastly, Stephens alleges Equal Protection violations based on his belief that other ACC parolees are allowed to participate in residential treatment programs in lieu of being sent to jail for violating parole conditions. To allege a cognizable Equal Protection claim, a plaintiff must establish: (1) intentional or purposeful discrimination, and (2) a violation of a fundamental right, membership in a protected class, or different treatment of similarly situated inmates. *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003). Here, Stephens has not alleged that he is a member of a protected class or that he was similarly situated to the parolees who were in residential treatment programs. Accordingly, he has not stated plausible claims against ACC Defendants Spencer, Eglin, West, Crews, or Caroline F., based on their alleged failure to provide him residential treatment for substance abuse.

### 2. Personal Disdain and Dislike

Next, Stephens asserts that Defendant Crews demonstrated personal disdain and dislike for both his father and himself, and that this personal disdain shows that Crews refused to adhere to ACC policies and procedures and was unable to have an unbiased attitude toward Stephens. Of course, merely disdaining or disliking someone is not the same as violating his constitutional rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (Section 1983 "is not itself a source of substantive rights but merely provides a method of vindicating federal rights elsewhere conferred') (internal quotation marks and citation omitted); *Roach v. City of Fredericktown, Mo.*, 882 F.2d 294, 297 (8th Cir. 1989) ("[W]e must first determine the specific constitutional right allegedly infringed . . . before

we can reach the question of whether the actions by [Defendant] violated the right and deprived the [Plaintiff] of a constitutional protection."). The Court finds this claim to be frivolous and dismisses it on that basis.

### 3. Grievance Procedure

Stephens has alleged that on January 20, 2017, he asked Officer West of the ACC for the "grievance procedure" he could use to protest the ACC's determination that he had a substance abuse problem and should participate in a substance abuse class. Stephens states that Officer West did not respond to his request to submit a grievance, and this lack of response violated Stephens' constitutional rights. What he fails to appreciate, however, is that "[i]nmates do not have a constitutionally protected right to a grievance procedure," since it "does not confer any substantive right upon prison inmates" and thus "is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (citations omitted) (a grievance procedure is not constitutionally required). Stephens claim regarding Officer West and request for a grievance procedure fails to state a plausible claim for relief.

### 4. Certain ACC Officials' Failure to Protect

Stephens contends that ACC Parole Officer West, and perhaps ACC substance abuse counselor, Caroline F., together showed deliberate indifference to his health and safety by allowing him to drive home after they just informed him that they believed he had a substance abuse problem. Stephens has not alleged that he was involved in a car accident or suffered any injury or harm as a result of being allowed to drive home that day.

The Court finds that Stephens has failed to state any claims of constitutional import

with regard to the decision to let him drive home. "[S]ubstantive due process . . . require[s] a state to protect individuals under two specific circumstances. First, the state owes a duty to protect those in its custody. Second, the state owes a duty to protect individuals if it created the danger to which the individuals are subjected." *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011). Here, there was no custodial relationship at the time Stephens was permitted to drive home. *See e.g., Fox v. Custis*, 712 F.2d 84 (4th Cir. 1983) (parolee was not actually in custody). Moreover, the State did not create the danger to which Stephens believes he was subjected—driving home while under the influence of drugs. Confusingly, Stephens also claims that he was not actually under the influence of methamphetamine at the time (thus, his request to Officer West that he be permitted to file a "grievance"). For all these reasons, Stephens has failed to state a claim for failure to protect/violation of substantive due process against Officer West or Caroline F.

### 5. Unlawful Search of Premises

Stephens next alleges that the search of his residence on or about January 31, 2017, was unlawful. He explains that he was arrested on February 1, 2017, for violating his parole, and he was removed from the residence in restraints. He argues that the only area of the residence he had control over was the living room, which he describes as his "living space," (Doc. 1, p. 11), but that the firearms that were found in the residence were in different rooms in the house that were not his "living space."

"Because fourth amendment rights are personal, a person challenging a search . . . must demonstrate that he or she had a legitimate expectation of privacy in the area searched. By establishing a legitimate expectation of privacy, the person establishes his

13

or her standing to challenge the search." *United States v. Wiley*, 847 F.2d 480, 481 (8th Cir. 1988) (citations omitted). The facts alleged by Stephens clearly demonstrate that he had no reasonable expectation of privacy in the areas of the home where the firearms were found, and he therefore has no standing to challenge the search. He admits that the home belonged to other individuals, and that he was simply staying with those individuals. He has therefore failed to assert any plausible Fourth Amendment claim against Officers Eglin, Spencer, and Penguite of the ACC, and against Officers Hignight and Mercado of the SPD related to the search of the premises.

To the extent Stephens has attempted to assert an unreasonable-search claim on behalf of homeowners Marty and Terri Stephens, he may not. Ordinarily, one individual cannot assert a claim on behalf of another individual. *Knoefler v. United Bank of Bismarck*, 20 F.3d 347, 348 (8th Cir. 1994) ("A nonlawyer . . . has no right to represent another entity . . . in a court of the United States."); *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, '[h]e has no authority to appear as an attorney for others than himself.'").

### 6. Allegedly False Statements in the Parole Report Submitted by the ACC

Stephens contends that Officer West falsely stated in a parole violation report dated February 2, 2017, that Stephens was arrested and booked on felony charges, and was incarcerated pending trial. Stephens believes that West, Spencer, and Eglin, under the supervision of Crews, knowingly violated his due process rights and his right to trial by an impartial jury by submitting this allegedly false parole report. Further, Stephens maintains that the submission of that report to the Parole Board led directly to him suffering cruel and

unusual punishment, in violation of the Eighth Amendment.

Even if the Court were to assume that the violation report contained false statements, there are no facts in the Complaint that would indicate that such statements—in and of themselves—resulted in the revocation of Stephens' parole. Stephens admits in his Complaint that he knew he would be revoked because he was behind on his supervision fees and had tested positive for drugs in a recent urine screen. Moreover, by February 16, 2017, well before his March 22, 2017 parole revocation hearing, Stephens had been separately charged with possession of firearms. Any statements made in the parole violation report cannot have violated Stephens' constitutional rights. *See e.g., McWhirt v. Putnam*, No. 06 4182 CV CSOW, 2008 WL 695384, at *2-3 (W.D. Mo. Mar. 12, 2008) (false statements in a parole violation report violated no constitutional right where parole would have been revoked without the statements).

### 7. Charge of Possession of Firearms

Stephens next asserts a claim against Officer Hignight of the SPD based on Hignight's alleged promise to Stephens that he would not being charged with possession of firearms. Stephens claims his family was in touch with both the SPD and the ACC, and understood that he was not going to be charged with a weapons offense. Nevertheless, Stephens was arrested for possession of firearms on February 16, 2017. He now believes the decision to charge him for this crime violated his constitutional rights, and he blames SPD Chief Peters, the John Doe Lieutenant on duty when he was booked, the John Doe Sergeant on duty, and arresting Officers Hignight and Mercado for this "violation."

The Court observes, first and foremost, that it is the prosecuting attorney, and not the arresting police officers, who decides what criminal charges should be pursued against

an individual. *See e.g., Imbler v. Pachtman*, 424 U.S. 409, 425 (1976) ("A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court"). The Court finds that no plausible constitutional claim is stated with respect to the SPD officers who arrested, fingerprinted, and booked Stephens for possessing firearms. Similarly, no constitutional violation occurred if, as Stephens alleges, members of the SPD or ACC speculated that Stephens would not be charged for weapons possession, since the charging decision belonged to the State prosecutor. Accordingly, this claim lacks all merit and will be dismissed.

### 8. Chain of Custody

Stephens' next claim is that the ACC Defendants violated the chain of custody with respect to the firearms that were seized from his residence. Chain of custody is an evidentiary issue, not a constitutional one. *See e.g., United States v. Allen*, 619 F.3d 518, 525 (6th Cir. 2010) ("Chain of custody issues are jury questions and the possibility of a break in the chain of custody of evidence goes to the weight of the evidence, not its admissibility"). There is no plausible Section 1983 claim related to Stephens' complaint regarding the chain of custody.

### 9. Threat of Retaliation for Using Kiosk System

Stephens' final substantive claim is that Sergeant Gardner of the WCDC did not substantively respond to a grievance Stephens submitted through the kiosk system. According to Stephens, the grievance discussed how ACC officers treated him in the events leading up to his incarceration. Stephens contends that Gardner threatened to retaliate against him for using the grievance procedure. Specifically, Stephens alleges that

Gardner told him that if he submitted any more grievances like the one dated February 23, 2017, "regarding ACC and its officials violating [Stephens'] rights," the grievances would be flagged as abusive. (Doc. 1, p. 24). Stephens interprets this comment to mean that he could face disciplinary action in the future if he merely exercised his First Amendment right to file grievances at the WCDC.

In *L.L. Nelson Enterprises, Inc. v. City of St. Louis, Mo.*, 673 F.3d 799, 807-08 (8th Cir. 2012), the Court stated that:

> [t]o establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that [he] engaged in a protected activity, (2) that the defendants responded with adverse action that would chill a person of ordinary firmness from continuing the activity, and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.

*Id.* (internal quotation marks and citations omitted). "In brief, the plaintiff must show the official took the adverse action because the plaintiff engaged in protected speech." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

Here, Stephens has failed to state a First Amendment retaliation claim. Certainly, the mere denial of a grievance does not state a substantive constitutional claim. *See Lombolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). And, although the act of filing a grievance is a protected by the First Amendment, *see Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009), Sergeant Gardner's response—if assumed to be exacly as Stephens stated it in his Complaint—was limited to restricting Stephens from refiling a grievance that was determined to lack merit. Since Stephens' grievance concerned ACC officials and not WCDC officials, policies, or conditions of confinement, the grievance was irrelevant to his custody at the WCDC. As Gardner's response did not direct Stephens to

stop grieving in general, or stop submitting grievances that related to WCDC custody, the response could not plausibly be construed to chill future speech. Importantly, Stephens never asserts that anyone from the WCDC retaliated against him for submitting this or any other grievance.

The Eighth Circuit has held that a jail may be liable for violating an inmate's constitutional rights if it disciplines the inmate "in retaliation for his having filed a grievance pursuant to established procedures." *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989). The situation in the case at bar is not remotely actionable, as Stephens does not contend that WCDC officials disciplined him in retaliation for him filing a grievance. Moreover, "prisoners must understand that . . . reasonable limitations may be placed on their access to the [grievance] procedure, just as reasonable limitations may be placed on prisoners' access to the courts when they abuse the judicial process by repeatedly filing frivolous claims." *Id.* In other words, the mere request by Gardner that Stephens refrain from filing frivolous grievances, like the one he did on February 23, 2017, does not implicate Stephens' First Amendment right. This claim is therefore dismissed.

### C. Official-Capacity Claims

Stephens makes clear in his Complaint that he asserts official-capacity claims against the SPD and WCDC Defendants, but not against the ACC Defendants. Official-capacity claims asserted against the SPD would be treated as a suit against the City of Springdale, Arkansas, and official-capacity claims asserted against the WCDC would be treated as a suit against Washington County, Arkansas. To state an official-capacity claim, the Complaint must allege that a governmental entity's official policy or custom played a

part in the violation of federal law. *Hafer*, 502 U.S. at 25.

The Court has carefully reviewed the Complaint and has located four claims that it believes Stephens intends as official-capacity claims against the City of Springdale. He maintains that the SPD, through its Chief of Police, endorsed a policy or practice of violating individuals' rights to be free of unreasonable search and seizure and to be free from being wrongly charged with certain crimes. These allegations relate to the search of Stephens' residence on February 1, 2017, and to his his arrest on February 16, 2017, for possession of firearms. *See* Doc. 1, pp. 12, 17. In particular, Stephens accuses Chief Peters, "the policy and procedure maker of the Springdale Police Department," of forcing Officers Hignight and Mercado to wrongly charge Stephens with a crime, arrest him, and fingerprint him, "with Deliberate Indifference and Prejudice." *Id.* at 17.

In a Section 1983 suit against a municipality, the Court must determine two issues: (1) whether a plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation. *Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir. 2000). A city is responsible for a constitutional violation when a municipal custom or policy causes the violation. *Id.* at 432. As previously discussed, no claim of constitutional import was stated by Stephens with respect to the search of his residence and the decision to charge him with possession of firearms. Because no Fourth or Fourteenth Amendment violation was committed by the SPD, no official-capacity claim has been stated against the City of Springdale.

As for Washington County's official-capacity liability, Stephens' only claim relates to Officer Gardner's handling of Stephens' grievance on February 23, 2017. The claim must fail because Stephens has not stated any facts to show that Gardner's individual

response to a single grievance was motivated by a particular policy or procedure employed by Washington County. Furthermore, even if such facts had been alleged, Gardner's response to the grievance did not violate Stephens' constitutional rights. Accordingly, no official-capacity claim has been stated against Washington County, Arkansas.

## IV. CONCLUSION

For the reasons stated, this case is dismissed for frivolousness and/or for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). A separate judgment will follow.

**IT IS SO ORDERED** on this 19th day of June, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE